UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brett W. Huber, Sr. and Renae Berkland Huber, as Co-Trustees for the next-of-kin of Brett Warner Huber, Jr., | Civ. No. 18-2317 (NEB/LIB) |
| Plaintiffs, | PETITION FOR DISTRIBUTION OF PROCEEDS UNDER MINNESOTA COURT RULE 144.05 |
| v. | |
| Cristina Ann Marie Sobiech, acting in her individual capacity as a Todd County correctional officer; James Olson, acting in his individual capacity as a Todd County correctional officer; John Does 1-2, acting in their individual capacities as Todd County correctional officers; Scott Wright, acting in his individual and official capacities as Jail Administrator of the Todd County Jail; and Todd County, | |
| Defendants. | |

Pursuant to Rule 144.05 of the Minnesota Rules of Practice—District Courts, Plaintiffs Brett W. Huber, Sr. and Renae Berkland Huber, as Co-Trustees for the next-of-kin of Brett Warner Huber, Jr., state and allege as follows:

1. Brett Warner Huber, Jr. ("Mr. Huber") was born on January 12, 1992 in Spearfish, SD.

2. Mr. Huber died on June 11, 2017 at St. Cloud Hospital in St. Cloud, MN.

3. Medical Examiner Michael B. McGee classified Mr. Huber's death as a suicide. The immediate cause of death was "anoxic brain injuries." Mr. Huber hung himself at the Todd County Jail in Long Prairie, MN on June 9, 2017.

4. Petitioners were appointed Co-Trustees for Mr. Huber's next-of-kin on January 3, 2018 by Todd County District Court Judge Douglas P. Anderson. Petitioners are Mr. Huber's natural parents. A copy of Judge Anderson's Order is attached as Exhibit 1.

5. Petitioners retained Gaskins, Bennett & Birrell, L.L.P. ("GBB") to represent them on behalf of Mr. Huber's next-of-kin pursuant to the terms of the Retainer Agreement attached hereto as Exhibit 2. Petitioners had several conversations with counsel at GBB prior to signing the Retainer Agreement in order to familiarize them with GBB's experience and the manner in which these cases arising under 42 U.S.C. § 1983 typically unfold.

6. The civil rights team at GBB is staffed with very experienced trial lawyers who, in connection with and separate from their civil rights work, routinely handle wrongful death cases of various types, as well as cases involving catastrophic injuries. The head of the civil rights team, Robert Bennett, represented the family of Abbey Taylor, who died as a result of a traumatic evisceration at the kiddie pool at the Minneapolis Golf Club, and was one of the lead trial counsel for the Consortium on the I-35W Bridge Collapse. The GBB civil rights team currently represents the Trustee for the next-of-kin of Justine Ruszczyk, who was killed by Minneapolis Police officer Noor. Mr. Bennett and his team have numerous multi-million dollar verdicts and settlements to their credit and are competent, effective lawyers well-suited to prosecute cases such as this.

7. GBB's lawyers have a particularized experience in Section 1983 cases involving jail suicides using the "deliberate indifference to the serious medical needs of inmates" standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976), and *Farmer v. Brennan*, 511 U.S. 825 (1994). GBB's experience in this area includes trial, appellate and prosecution

of cases to settlement. GBB's Robert Bennett, Andrew Noel and Kathryn Bennett received the Attorney of the Year award for their work on the federal civil rights wrongful death action regarding the suicide of Kathryn Marie Schneider, a 28-year-old mother who hanged herself at the Koochiching County Jail. Presently GBB is prosecuting six such cases.

8. Petitioners filed the above-captioned lawsuit on August 8, 2018 alleging Eighth and Fourteenth Amendment violations against Todd County and the individual defendants under 42 U.S.C. § 1983. The Complaint is attached as Exhibit 3.

9. Petitioners' goals in retaining GBB and bringing forth these claims can be summarized as follows: (1) to find out what precisely occurred inside the Todd County Jail that resulted in Mr. Huber having the time and opportunity to commit suicide in its custody; (2) to effect change in the practices at the Todd County Jail in order to best prevent another similar tragedy; and (3) to vindicate Mr. Huber's federal civil rights and secure compensation for Mr. Huber's next-of-kin.

10. Mr. Huber's next-of-kin are:

| Name | Age | Relation | Address |
|---|---|---|---|
| Brett W. Huber, Sr. | 56 | Father | 2924 Captain Cook Estates Circle<br>Anchorage, AK 99517 |
| Renae Berkland Huber | 61 | Mother | P.O. Box 452<br>Trenton, NE 69044 |
| Sarah Allbright | 35 | Sister | 1237 Elsinor Avenue<br>Ventura, CA 93004 |
| Ben Huber | 29 | Brother | 8965 E. Florida Avenue, #7304<br>Denver, CO 80247 |
| Walter Huber | 86 | Grandfather | 18 Benjamins Road<br>Garvin, MN 56132 |

Brigitte Huber          81         Grandmother          18 Benjamins Road
                                                        Garvin, MN 56132

11. Prior to filing the Complaint, GBB obtained a hard drive with voluminous evidence, including video surveillance and audio interviews, relating to Mr. Huber's incarceration at the Todd County Jail from March 18, 2017 through June 9, 2017.

12. GBB set out to answer Petitioners' first question: What happened?

13. All of the hard drive materials from Todd County were reviewed and analyzed and GBB obtained additional outside medical records regarding Mr. Huber in an attempt to cogently explain and recite the events surrounding Mr. Huber's death. This process took many hours and required two primary attorneys in order to ensure all potential issues were spotted and addressed. Research was also performed to investigate Todd County's history and other events occurring at the jail that could bear on any issues in Mr. Huber's case.

14. The product of GBB's pre-suit analysis and investigation is the attached forty-six page Complaint. A review of the Complaint will give this Court a thorough understanding of the factual and legal elements of the lawsuit.

15. Through reading the Complaint and discussions with GBB, Petitioners went through the difficult process of learning how Todd County's repeated failures resulted in their son committing suicide. It was a necessary step to find out exactly what went wrong inside the facility. But it also triggered a variety of emotions, including anger because of the fact that Todd County had prior warnings from the Minnesota Department of Corrections advising the County and Jail Administrator Scott Wright that its practices were dangerous.

4

16. Specifically, the issue of well-being checks was a historical problem for Todd County and they were warned about it by the Minnesota Department of Corrections. An inspection report from the DOC in 2016 expressly informed Administrator Wright and Todd County that compliance issues relating to inmate well-being checks were both historical and current problems. Several well-being checks were logged but not completed. This unfortunately occurred with Mr. Huber when staff falsely logged a well-being check on him when he was already hanging.

17. The same issues were identified during the DOC inspection one month after Mr. Huber committed suicide. We have no evidence that the systemic issues at the Todd County Jail were addressed before the Complaint was filed. The September 2018 DOC inspection noted improvement in the area of well-being checks. Unfortunately, it took at least one death and a lawsuit with great exposure for the County to finally act.

18. After the Complaint was filed, Plaintiffs' counsel had discussions with defense counsel Jason Hiveley of Iverson Reuvers Condon. It was determined that Todd County carried insurance through the Minnesota Counties Intergovernmental Trust ("MCIT") with an applicable policy limit of $2,000,000.00. The declaration sheet is attached as Exhibit 4.

19. GBB had regular conversations with Mr. Hiveley about the merits of the case and practicalities in terms of how to best engage in productive settlement discussions. GBB communicated with us by phone/email regarding the status/progress of these discussions. Both Petitioners live out of state—Renae Huber in Nebraska and Brett Huber, Sr. in Alaska. Ultimately, we gave GBB our authority to demand MCIT's policy limit of $2,000,000.00 to resolve the case against the individual defendants and Todd County.

20. GBB relayed the demand to Mr. Hiveley and after several additional conversations counsel for the parties decided to schedule an early mediation with Retired United States Magistrate Judge Arthur J. Boylan on December 5, 2018. The case settled at that mediation for $1,800,000 and appropriate Releases were executed. The individual Defendants will be dismissed by Stipulation and Todd County, through its insurer will pay the settlement proceeds. We believe this constitutes an efficient, excellent result in this case under extraordinarily difficult circumstances for the family.

21. Because one of the purposes of this lawsuit was to vindicate Mr. Huber's federal civil rights, this case was pursued under 42 U.S.C. § 1983. GBB kept us informed of the activities, strategies, tactics and negotiations on a timely basis. We felt comfortable with the GBB legal team as did the rest of Mr. Huber's family. We trusted that all of our concerns and questions were addressed directly and promptly.

22. We believe that GBB's experience and track record in civil rights cases—and jail suicide cases in particular—was instrumental in obtaining the settlement from Todd County through the MCIT. GBB explained to us that they devoted multiple lawyers to our case – each performing substantive work on the case in the investigative, pleading, and settlement-negotiation phases.

23. In the Retainer Agreement, we agreed to pay a contingent legal fee in the amount of 45% ($810,000) plus repayment—upon any recovery—of GBB's out-of-pocket costs, including the $3,500 mediation fee of Judge Boylan. We believe that GBB earned the fee that we agreed to in the Retainer Agreement.

24. We understand that GBB has voluntarily agreed to reduce its legal fee by the sum of $100,000 and to waive any claim for costs, which are attached as Exhibit 5. Accordingly, we believe that $710,000 is a reasonable amount to be paid for attorneys' fees to GBB, along with the waiver of any further claim for costs.

25. The fee is in accordance with Rule 1.5 of the Minnesota Rules of Professional Conduct, which our attorneys fully explained to us. The eight factors to be considered are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

26. Of particular importance in this matter are factors 1, 3, 4, 6, 7 and 8. With regard to factor number 1, the GBB civil rights team had the skills to perform the services properly and the ingenuity to deal with the difficulties presented in § 1983 lawsuits – particularly jail suicide and deliberate indifference cases. There are relatively few such cases nationwide prosecuted successfully because of the difficulty of proving the objective and

subjective elements of deliberate indifference of jailers and/or jail medical staff. Few lawyers in Minnesota have done so successfully once, let alone a number of times. The GBB team has done so three times with regard to jail suicides and at least five other times when the inmate was injured, but did not die. Mr. Bennett and his team are well-known to the MCIT. *See* attached article from the Minneapolis Star-Tribune dated April 15, 2018 (exhibit 6). The Honorable Chief Judge of the United States District Court, John R. Tunheim, previously wrote that "the Court has observed that police misconduct cases are very difficult for plaintiffs to win and require significant trial skill and expertise of lawyers. Indeed the Supreme Court has compared the complexity of civil rights litigation to antitrust litigation." *King v. Turner*, 05-CV-388 (JRT/FLN) 2007 WL 1219308 at *1 (D. Minn. April 24, 2007). In *Madison v. Willis*, No. 09-930 (DWF/AJB), 2011 WL 851479, at *2 (D. Minn. March 9, 2011), United States District Judge Donovan W. Frank was complementary of the GBB civil rights team, stating: "it is likely that [plaintiff's] success was due at least in part on the composition of the legal staff and their consultation with each other."

27.     With regard to factor number 3, we determined that a 45% contingent fee was certainly not atypical for such representation in this area and agreed in writing to such a fee at the outset of the litigation. Consequently, GBB's voluntary reduction of the fee by $100,000 is more than fair. A higher percentage fee was approved in *Kucera v. Jespersen*, 14-cv-4218 (SRN/LIB), United States District Judge Susan Richard Nelson, a copy of which is attached as Exhibit 7, essentially at the same point in the prosecution of the case. With regard to factor number 4, we believe that the $1.8 million settlement is extraordinary given the difficulty of these types of cases and the uncertainty associated with jury verdicts in cases

seeking damages resulting from a suicide. With regard to factor number 6, we believe that we were well represented and counseled throughout this entire matter. With regard to factor number 7, we believe now, as we did when we hired GBB, that we were hiring people with excellent experience, fine reputations and excellent ability to perform the legal services necessary to obtain the best result. With regard to factor number 8, the fee was contingent.

28. Therefore the net recovery to the next-of-kin is $1,090,000. Petitioners request that the amount of $1,090,000 be distributed as follows:

    a. $250,000 to Mr. Huber's father, Brett W. Huber, Sr.;

    b. $250,000 to Mr. Huber's mother, Renae Berkland Huber;

    c. $250,000 to Mr. Huber's sister, Sarah Allbright;

    d. $250,000 to Mr. Huber's brother, Ben Huber;

    e. $45,000 to Mr. Huber's grandfather, Walter Huber; and

    f. $45,000 to Mr. Huber's grandmother, Brigitte Huber.

29. Petitioners discussed potential distribution concepts together and with counsel. Each of the next-of-kin has agreed to the proposal outlined above as evidenced by the consents attached as Exhibit 8.

30. Each of Mr. Huber's next-of-kin had close, meaningful relationships with Mr. Huber. The Petitioners agree that it is not in anyone's interest—nor would it serve Mr. Huber's memory—to value any individual's loss more than another family member's. The exception would be Mr. Huber's grandparents. That distinction is made not because of the quality of the relationship but simply to reflect their age and the common distinction between immediate family and more extended family.

9

31. Petitioners discussed this plan with all of the next-of-kin before coming to a final proposal and all were in agreement that this fairly allocates the recovery resulting from Mr. Huber's untimely death.

32. Petitioners seek approval of this distribution.

33. Petitioners are not seeking any fees or costs for serving as Co-Trustees.

34. No other next-of-kin have notified the Petitioners in writing or otherwise of a claim for any distribution of these settlement proceeds.

35. The Co-Trustees reside in Alaska (Brett Huber, Sr.) and Nebraska (Renae Berkland Huber), and the siblings live in California (Sarah Allbright) and Colorado (Ben Huber). All of these people attended the mediation in Minneapolis and all had significant and separate interactions with Judge Boylan over an 8-hour period of time.

36. The Co-Trustees ask that the Petition be approved on the papers submitted without further need for appearance before this Court.

37. Judge Boylan supports this request and will tender an affidavit doing so.

WHEREFORE, Petitioners pray for an Order of the Court as requested above.

**Verified by:** _/s/ Brett Huber_

Brett W. Huber, Sr., as Co-Trustee for the next-of-kin of Brett Warner Huber, Jr.

Subscribed to and sworn before me this ____ day of December, 2018.

_/s/ Molly Olson_
Notary Public

MOLLY J. OLSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2020

**and**

10

*Renae Berkland Huber, Co-Trustee*
Renae Berkland Huber, as Co-Trustee for the next-of-kin of Brett Warner Huber, Jr.

Subscribed to and sworn before me this 6th day of December, 2018.

*Molly Olson*
Notary Public

[Notary Seal: MOLLY J. OLSON, NOTARY PUBLIC - MINNESOTA, My Commission Expires Jan. 31, 2020]

GASKINS, BENNETT & BIRRELL, L.L.P.

Date: 12/6/18

*Robert Bennett*
Robert Bennett, #6713
Andrew J. Noel, #322118
Kathryn H. Bennett, #0392087
Marc E. Betinsky, #0388414
333 South Seventh Street, #3000
Minneapolis, MN 55402
Telephone: 612-333-9500
rbennett@gaskinsbennett.com
anoel@gaskinsbennett.com
kbennett@gaskinsbennett.com
mbetinsky@gaskinsbennett.com

Attorneys for Plaintiffs

11